Curia, per
Nott, J.
The bill in this case states, that William Willson of Georgetown by the residuary clause of his will devised all that part of his estate, not otherwise disposed of, in the following manner. “ The rest and residue of my real and personal estate to be divided between my grand sons Willson Willson and Thomas Willson, and delivered to them at the age of twenty-one; but should they die leaving no lawful issue, in that case I give the whole of my estate, both real and personal, to Richard Godfrey and others, &c. to be equally divided between them.” Willson Willson died under age and without issue, by which his moiety went over to Thomas Willson, by way of cross remainder by implication. Thomas Willson sold the property in question to the defendant, and also disposed of other property real and personal so devised to him to other persons, and af-terwards died leaving several 'children, of whom Sarah Carr, wife of the complainant Isaac Carr, is one. The complainants now allege that their father Thomas Will-son took only a life estate under the will of their great grand father, with a remainder over to his issue, that he could convey an estate therein during his own life only, and that the title to the defendant terminated at his *67 death. The prayer of the bill is, that the deed to the defendant may be set aside, that the title deeds may be delivered up, that he may be made to account for the rents and profits, &c. and that the complainants have partition of the land, &c.
The defendant has filed a special demurrer which has been sustained in the Court below; and this is a motion to reverse that decision. The defendant however, instead of relying on his special causes of demurrer, has taken the broad ground, that the complainants by their own shewing have no cause of action. He contends that the will of William Willson gave Thomas Willson a fee in the land; that no distinct interest was given to his issue; and that the subsequent limitation to the God-freys could have no other effect than to convert what would otherwise have been a fee simple into a conditional fee, with a limitation over as a contingent remainder or executory devise, dependent on the contingency of Thomas Willson dying without issue; in either of which cases he had a right to convey until the contingency happened ; and as he did leave issue, the contingency never could happen, and the defendant has a good title.
On the other hand it is admitted that the words of the will, giving the estate to Thomas Willson, are sufficiently ample to carry a fee, but that by the subsequent limitation the testator has manifested a plain and obvious intention to provide for the issue, and that that intention can in no other way be effected than by construing the devise to Thomas Willson an estate for life by implication, with a remainder over to his issue as purchasers. So that the whole case depends upon the construction to be given to that part of the will of William Willson which has been above exhibited.
The doctrine of contingent remainders and executory devises is, in its various modifications, abstruse and diffi *68 cult, and a variety of circumstances combine to give to this case a degree of importance, which perhaps would not be found in the intrinsic merits of the case itself, nor in the particular question submitted to our consideration.
It has already been remarked that Thomas Willson, supposing that he was entitled to an absolute estate in all the property devised to him by his grandfather, had disposed of portions of it to several persons previous to his death. That disposition of the property has given rise to several actions since his death, which have called for a construction of the clause of the will now under consideration. The first was the case of Grant and others v. Thompson and others in the Court of Equity, in which it was held that Thomas Willson took only an estate for life, with a remainder over in fee to his issue as purchasers. The next was an action of trover, brought at law by the present complainants and others against John W. Jeanneret and others, in which it was held that Thomas Willson took an absolute estate. The first was supported by the unanimous opinion of the Court of Appeals in Equity, and the latter by the constitutional Court of Appeals at Law. The third was the case of the same complainants against James Green in Equity, 2 M’Cord’s Reports, 75. In consequence of these conflicting decisions that Court heard another argument upon the question, and after taking time for consideration adhered to their former decision; the grounds and reasons of which will be found in the learned opinion already alluded to in 2 M’Cord’s Reports, 75. This is therefore the fourth time that the same question arising upon the same will has been submitted to the highest tribunal to which, according to the organization of our Courts, it could be submitted. It is not extraordinary therefore that it should have excited a degree of interest which has seldom been felt in the decision of any case in this state. The question how *69 far the decision of the Court of Appeals in Equity, or of the constitutional Court, ought to have been obligatory on the other cannot now arise. For each of those Courts having maintained its own independence in this case, their decisions will be considered as of equal authority by this Court, on whom has devolved the important um-pirage of deciding between them. As all the members of this Court were members of the constitutional Court at the time those decisions were made, it may be supposed that we are still under the influence of that pride of opinion which the decision of that Court might be expected to create. I feel it a duty therefore, which I owe to myself, to observe, that I was absent when the question was formerly argued in that Court; and I am sure I never went into Court with a more unbiassed mind than when I sat down to listen to the argument in this case. Being the first time I have had occasion to form an opinion on the subject, and being under no influence from either of the opinions which have been hitherto expressed, I have had none of the difficulties to encounter which would have occurred in a case which had been in some measure prejudged. I have bestowed upon it all the attention which it appeared to me its importance requires, and after the best consideration in my power I have been constrained to come to a different conclusion from the Court of Equity. But notwithstanding the perfect conviction which has been produced on my own mind, I cannot flatter myself that the same reasons will produce such conviction on the minds of others; but that a difference of opinion will still continue to exist on the subject. I will however proceed with humble deference for the learned Court, whose decision I am about to controvert, to express the grounds and the reasons on which my opinion is formed. I am not insensible of the importance of the duty which I am now about to perform. This decision must be final and conclusive of the question, *70 and it is therefore of the utmost importance that it should be such as will stand the test of future investigation. Whether it will be so or not, I can only say it is the result of my best judgment.
How far intention is to govern in wills.
The case has been ably argued by the counsel on the part of the defendant. On the part of the complainants the Court has been referred to the opinion of the Court of Equity in the case of Carr and others v. Green, as containing all the law upon the subject, and that- opinion has been adopted as the argument in this case. So that it is really the decision in the case of Carr and others v. Green, which we are now called upon to consider, and not the case of Carr et al. v. Porter; though the fate of the latter must depend upon the opinion which we may entertain of the decision of the former. Considering the opinion in that case, therefore, as the argument in this, I will proceed to consider the principles by which it is supposed it ought to be governed, and the authorities relied upon in support of them.
As preliminary to the question to be decided, two propositions have been laid down, the establishment of which it seems to be thought necessarily lead to the conclusion that the complainants derived a fee simple by a direct devise to them as purchasers. The first is, that in the construction of a will the intention of the testator must always prevail. The second is, that express words are not necessary to create an estate; but that an estate may arise, be enlarged, controlled and even destroyed by implication. Now I will say, in the language of the argument, that “ both of those general propositions are such plain legal truths that no Judge would hesitate to assent to them.” That the intention is to prevail in the construction of a will is now grown into a maxim, which seems habitually to fall from the lips of a Judge whenever such a question arises, without considering the effect which it is calculated to produce, or the extent of *71 eonstruction of which it is susceptible. But no Judge could ever intend to carry the doctrine so far as to lay aside all the settled rules of construction, and to determine the testator’s intention from his own arbitrary viéws . J of the abstract justice of the case.
The authority in "the construction °£ Wllls'
It is well known that persons are many times reduced to the necessity of performing that last solemn act of their lives under circumstances that will not admit of the aid of counsel. The law therefore presumes that it may always be the case, and will ndt suffer the intention to be defeated merely because the testator has not clothed his ideas in technical language. And that is the whole extent of the rule. Thus if a man gives his land to one and his assigns for ever, or gives his whole estate, or couples the devise with some trust or duty which cannot be performed without taking a fee simple, in those and such like cases it will be construed into a fee without the word “ heir,” which is a technical word of inheritance ; because the intention is plain and manifest. But we are no more permitted to enter into the mind of a testator to see what was passing there, than we are into the mind of any other man to ascertain his motive of action. It is from his words we are to ascertain his intention. And whenever a construction has been given by a competent tribunal to any form of words, such decision has always been held as obligatory on all succeeding Judges in cases of wills, as in any other cases. Fearne, speaking of the notion that we must lay aside all precedent in the construction of wills and that every Judge must be governed by his own views of the intention of the testator, remarks, <c such a mode of construing, wills, if once fully established, would open an almost unlimited power to the Judge of disposing of the property of testators, and directing the circulation of it to his own mind.” “ If rules and maxims of law (observes the same author) were to ebb and flow with the taste of *72 the Judge, or to assume that shape which in his fancy best becomes the times ; if the decision of one case were not to ruled by or depend at all upon former decisions in other cases of a like nature, I should be glad to know what person would venture to purchase an estate, without first having the judgment of a Court of Justice respecting the identical title under which he means to purchase *?”
“ Construction, depending on and guided by certain known rules, will not be liable to those various temporary influences which must necessarily have a share in directing the discretionary decision of any court upon earth. No inducement can arise, no room can be left, to dispute or litigate titles built on such a stable foundation ; whereas on the other hand the implied intention is at best uncertain, frequently very doubtful. Favour, affection, caprice, nay different habits of thinking and modes of expression in different men, will occasion different constructions of the same will.” 1 Fearne, 171. (1th Lond. Ed.) Lord Mansfield, speaking on the same subject, says, the great object in questions of pro-, perty is certainty. And, therefore, he says in the case of Hodgson v. Ambrose, Doug. 337, “whatever our opinion might be upon principle and authority, if the point were new, we think, as this is literally the same case as Coulson and Coulson, 2 Str. 1125, 2 Atk. 246, and that has stood as law for so many years, it ought not ,now to be litigated again.” In the case of Doe v. Wright, 8 Term Rep. 66, Lord Kenyon laments that the same technical words are not required in wills as in deeds, “ but,” he says, “ that some rules have been established by a series of decisions on the subject, and we should be removing land marks if we were to abandon that which has been adopted as a rule of property, in pursuit of a doubtful intention of a testator.” So in the case of Right v. Sidebotham, Doug. 763, Lord Mansfield *73 said “he verily believed that in almost every case where by law a general devise of land is reduced to an estate for life, the intent of the testator was thwarted,” yet he considered the rule of law certain and must prevail , . - 7 Ti against the intention. Judge Buller makes the same remark in the case of Doe v. Richards, 3 Term Rep. 358; yet he says the rule of law is settled, that unless some words are used which the law considers as sufficient to carry a fee the devisee can only take an estate for life. And I am very much mistaken if it will not be found, in every case where it is said that the intention must prevail, that the intention is drawn from expressions in the will, and not left to mere conjecture ; and wherever the observation has been made, that one case cannot be a precedent for another, it only means that such is the variety of expression by which the intention may be manifested, that it can seldom happen that two wills can be couched in terms so exactly alike, but that they will admit of a different construction by different persons; and therefore where no precedent can be found by which it can be governed each must form a law for itself. But it never can be tolerated that where the words are the same, or are calculated to convey the same meaning, the decision of one shall not be a precedent for others. And for the purpose of establishing the doctrine which I have advanced, I require no higher authority than the cases which have been relied on in the argument to support a contrary position. Indeed if those cases do not go the whole length of deciding the case now under consideration, I certainly have mistaken them. The first is the case of Forth v. Chapman, 1 P. Wms, 666. In that case the testator had given the residue of his estate, consisting of both freehold and leasehold, to his two brothers, and if either of them should depart this life and leave no issue of their respective bodies, then to go over to the children of his brother and *74 sister. In principle it is the very case now under consideration. This is the case from which the opinion of Lord Mansfield is taken, to prove the influence of intention in the construction of a will; yet Lord Maccles-field says that those words, m a devise of real estate, carry a fee tail, and the reason is in favour of the issue, that they may have it, and the intent take effect. See also Fearne, 172, et seq. Sheffield v. Avery, 3 Atk. 288.
Notwithstanding the great influence therefore which Lord Macclesfield was disposed to allow to the intention, he did not feel authorized to travel out of the will in pursuit of it, nor to disregard former decisions on the construction of the same words. And the same Judge says, 1 P. Wms, 667, that where there is a devise of personal estate to one for life and if he die without issue then to another, the issue cannot by any construction take it. It would appear to me, therefore, that the decision of the Court of Equity derives but little support from the opinion of Lord Macclesfield.
The next is the case of Hodgson v. Ambrose, Doug. 337, in which Judge Bulled is represented as saying, that intention is the rule to which all others must bend. But that intention, Judge Bulled also says, must be consistent with the rules of law. A man cannot by will create a perpetuity; he can not put a freehold in abeyance; he can not limit a fee upon a fee; nor make a chattel descend to heirs. Judge Bulled therefore says nothing more than what every person will admit, that the intention must prevail where it is clearly expressed, the want of technical words to the contrary notwithstanding. He also shews his respect for decided cases, by recognizing the case of Coulson and Coulson, 2 Str. 1125, 2 Atk. 246, as a governing authority in the case then under consideration. In that case the testator had given his land to his grand son Robert Coulson for life, remainder to A. and B. to preserve contingent remainders during the *75 life of Robert Coulson, remainder to the heirs of the body of Robert. It was there argued as in this case, that the devisee took only an estate for life and that the heir took as purchaser. But the Court held that the heir could not take as purchaser, and that to effect the intern tion of the testator the devisee, notwithstanding there was an express estate for life given to him, must take an estate tail. Now if the issue can not take as purchasers where there is an express estate for life given to the ancestor with an express devise over to them, how can they take as such where nothing is given to them, and a fee simple is given to the ancestor 9
The next case cited for the same purpose is that of Knight v. Ellis, 2 Bro. C. C. 570, where Lord Thub-low is represented as laying down the rule, “ that the Court will go every possible length to carry the intention of the testator into execution for the benefit of those to whom the testator intended a benefit.” Let us now see how far Lord Thublow felt authorized, under the rule thus laid down by himself, to go for the purpose of carrying the intention into effect. I will give the words of that learned Judge. “ A man by his will devises to A. for life, there being plainly an interest only for life given; if that were all, the disposition would end there as to A. and any other giftwould be effectual after his death. The testator then gives the same fund over to B. after failure of issue of A.” This is the case stated by Lord Thublow. Now let us state the case before us as the complainants would have it. William Willson gives his estate to Thomas Willson for life, he then gives the same fund over to the Godfreys, after failure of issue of Thomas Willson. The two cases are precisely alike, except as to the names of the parties. We will now see what his Lordship’s opinion would be in such a case. He goes on to ask, “ what is the Court to do “? It is clear, that a life estate only is given to A. It is clear that no benefit is given to B. while there is any *76 issue of A.; the consequence is, that as no interest Spr¡ngS jj, and no express estate is given after the death of A. the intermediate interest would be undisposed of, unless A. were considered as taking for the benefit of his t t issue as well as of himself; and as the words will' admit of such amplification, the Court will naturally imply an intention in the testator that A. should so take, that the property should be transmissible through him to his issue, and he was therefore considered as taking an estate tail.” And that must be the decision in the case before us, according to the construction given to the will of William Willson, by the complainants themselves: but the case as it actually exists is still stronger against them. In the case put by Lord Thurlow, the devise was to A. for life expressly; yet it was not considered that the issue could take by purchase. In this case a fee simple is given to Thomas Willson; so that the estate is transmissible through him to his issue per formam doni, and we are not left to construction to afford them the benefit which was intended them under the will. I will here take leave of the authorities in relation to that part of the case ; and if I have not succeeded in proving every thing which I undertook to prove by them, I shall despair of doing so. I mean that I have shewn that Lord Macclesfield, Lord Thurlow and Judge Buller, whose opinions have been relied on to prove that in the construction of a will the intention is to govern, have always made use of that expression with the restriction which I have laid down. That they have shewn the same respect for decisions involving the construction of wills as for any other decisions. And that, in cases exactly analogous to that now under consideration, they have come to conclusions directly the reverse of the opinion in support of which they have been quoted. I will however observe, that were I to form an opinion of the testator’s intention from the words of the will, independently of *77 authority, I should come to the same conclusion. The testator gives the whole estate to Thomas Willson, his grand son. What could we infer from such a devise, but that he intended to give him an estate transmissible to his issue by way of inheritance, and nothing more *? But it is said that, by giving the estate over to remote relations, after the failure of issue, he has manifested an intention to provide a distinct benefit for the issue. Suppose he had given the property to Willson and his heirs. In such case, although the heirs were mentioned, no distinct interest would arise to them. They would have acquired no benefit, except the right of inheritance, in case the property remained undisposed of at his death. Suppose it had been limited to him and the heirs of his body, which would have been still stronger, yet the devise would have barred the descent. In this case, however, the testator has given a fee simple to his grand son. He has given nothing to his issue. How then can we suppose that he intended to give a life estate to one to whom he has expressly given a fee simple, and that he intended a fee simple to those to whom he has given nothing at all *? To give it such a construction we must not only infer his meaning from what he has not said, but we must presume that he intended something directly contrary to what he has said.
An estate may be enlarged, controlled, and even destroyed byim-plication; but the principle must be taken subject to certain other well established rules, as that where an instrument is reduced to writing, nothing is to be implied which does not arise from the face of the writing.
And this brings us to the second proposition, which involves the inquiry how far an estate may arise by implication1? I have already admitted the abstract proposition to the whole extent which has been contended for, I have admitted that an estate may arise, may be enlarged, may be controlled and even destroyed by implication But the doctrine of implication must be received subject to certain established rules and principles. It is a pretty well established rule of the common law, that when a contract is reduced to writing, nothing is to be implied which does not arise from the face of the writing. It is *78 to be presumed that when a person undertakes to express his ideas in writing, that nothing is to be left to inference. Therefore Mr Fearne says, p. 49, “raising an estate by implication, in direct contradiction to and denial of' an express estate, is irreconcileablc with the idea of implication.” In this case the testator has given a fee simple to his grand son; he has given nothing to the issue. Would it not be incompatible with the express intention of the testator to imply an estate for life to the grand son and a fee simple to the issue ¶ Again, it is laid down by Mr Fonblanque that, an estate is never implied to issue as purchasers. 2 Fonbl. 62. The same principle is recognized by Mr Fearne. Fearne, 449. The authorities relied on are Lady Lanesborough v. Fox, Cas. Temp. Talb. 262 and Bodens v. Watson, Amb. 398. 478. It is contended that those cases do not support the position for which they are adduced. I shall not enter into a very minute examination of them, for the purpose of ascertaining whether they do or do not; for in the sequel of this opinion I shall have occasion to refer to several cases, which, although they do not expressly decide the question, are obviously bottomed on the assumption that such is the settled rule of law.
An estate by-implication cannot be raised in direct contradiction to and denial of an express estate.
An estate is never implied to issue as purchasers.
But, with regard to the first, I do not view it precisely in the same light as it has been considered in the argument. Two points appear to have been determined —1. That a devise to the male heirs for life was not such a precedent estate as. would support a devise of the reversion to the heirs generally. 2. That the words “on failure of issue of the body of B.” would not raise an estate tail by implication; as he took no express or particular estate at all by the will. Fearne, 446. See also Moore v. Parker, 1 Lord Raym. 37. The last is the only point in support of which the case is relied on, and the other points in the case are immaterial as *79 they regard that question. In the case of Bodens v. Watson Mileora Bodens, by will, directed her house and all her effects to be sold and to be laid out in funds for Mr George Bodens, during his life, and if he should have no “heirs” to his sister Mrs Jane Watson. . The question was whether the devise over to Mrs Watson was too-remote. The Lord Chancellor said, “I cannot imply a gift to the issue, as purchasers; for such an implication mud be necessary, which is not the case here.” The word “heirs” must mean heirs of the body, and the testatrix certainly intended not only that George Bodens, but also his issue, should take preferably to Mrs Watson, and that can only be by transmissibility; for they cannot take as purchasers. It is true the remainder here is to take effect after a failure of heirs generally. But I do not see how that is to effect the question of implication. It is not, however, necessary to dwell upon the question, whether issue can in any case take as purchasers by implication : for an estate by implication can never arise to any one except from necessity. And where such implication is raised from the will, the necessity must appear on the face of the will also. And such an implication is never allowed where the provisions of the will can otherwise be carried into effect, because then no such necessity exists. In support of this position, also, I require no higher authorities than those relied on in the case of Carr v. Green, from which a contrary conclusion has been drawn. Mr Fonblanque, after laying down the general principle, proceeds to illustrate his several propositions by cases which I will proceed to consider in their order. An estate may arise by implication, where a man devises an estate to his heir after the death of his wife. Here the wife shall take an estate for life by implication; for the heir is not to take until after the death of the wife, and as there is no other person who can take, it must be presumed that he intended it for his wife 5 otherwise that *80 part of the estate would be undisposed of. But the ease under consideration affords, perhaps, as good an example as any that can be adduced. The testator gives an estate to his two grand sons, but if they die without leaving issue, then over. Now the estate does not go over to the Godfreys until a failure of issue of both his grand sons. Of course, if one dies without issue, his estate goes over to the other, ,as a cross remainder by implication. Judge Blackstone, also, who says an estate may be raised by implication, gives the same example of a father devising to his heir, after the death of his wife, &c. But Cheistian adds, if the devise had been to a stranger, instead of the heir, it is thought no such estate would have been implied to the wife; because it might have descended, to the heir in the mean time. 2 Blac. Com. 381. Foriblanque also comes to the same conclusion, after having considered all the cases on the subject. 2 Fonbl. 57 — 65. It is true, that Plowden, in giving an instance of an estate arising by implication, does say that where a man devises land to one, habendum to him and his heirs, after the death of the wife of the devisor, then, although the wife is not named before the haben-dum, she shall take the estate thereby. This author does not distinguish between a devise to the heir and to a stranger. But he appears to rely on a case from the Year Books. 13 H. 7. And in the margin of Plow-den the commentator says, this case, as it is here put, is clearly contrary to the settled rules of law at this day, and is not warranted by the book of 13 H. 7: for the case there is of a devise to the heir at law. Throcmerton v. Tracy, 1 Plowd. 145. See also Holmes v. Meynel, T. Raym. 454. Phillips v. Phillips, 1 P. Wms, 38. Falconer v. Falconer, 1 Vern. 21. City of London v. Garway et al. 2 Vern. 571. In all of which the distinction is made between a devise to the heir and a stranger. And in the case of Phillips v. Phillips, it *81 is said “this is the known case of 13 H. 7,” which is the authority relied on by Plowden.
An estate by-implication can only arise by a necessary implication, and the necessity must appear on the face of the will. Sucl* implication is inadmissible where the provisions of the will can otherwise be carried into effect.
Implication is stronger in fa-vour of an heir than a stranger.
Rule in Shel-
Now however high authority we may suppose Plow-den to be; yet, as he is not supported by any cotemporary writer and is- contradicted by all the subsequent authorities, we must suppose that he has mistaken the - law in one instance, or that his reporter has mistaken him. And if we examine the cases throughout, we shall find the same rule to apply, that an estate by implication is never allowed except when it is necessary to carry some manifest intention into effect. The same rule applies where an estate is to be enlarged by implication. Thus if an estate is devised to A. generally,, and for want of issue the remainder over to B,, A. shall take an estate tail by implication. For though the estate to A. generally would of itself pass only a life estate, yet as no benefit is given to B. while there is any issue of A. the con- ; sequence would be that, as no interest springs to B. and no express estate is given to the issue of A., after the -, death of A. the intermediate estate would be undisposed ' of, unless A. were considered as taking as well for his issue as for himself. To effect that intention he will be , considered as taking an estate tail. And in support of this position the case of Knight v. Ellis, 2 Bro. C. C. 570, is relied on, which is quoted on the other side and has already been referred to. But, why could it not be construed a devise4to the first taker, and a remainder over ; to the issue as purchasers 1 Because, according to the ; rule in Shelley’s case, a devise to one for life, with remainder to his heirs or issue, is not a direct gift to issue; it only amounts to an enlargement of the estate in the first devisee,.converting a life estate into afee sim-pie or fee tail, and rendering it thereby transmissible to his issue. And therefore Fonblanque observes, with reference to the case of Knight v. Ellis, that it is the only construction which can be given to such words, con *82 sistent with the intention of the testator ; for it seems clear that the issue could not take as purchasers by implication. 2 Fonb. 58. 69. So where an estate is given to one coupled with some trust, which qannot be executed without construing it into a fee simple, there the law will imply such an intention. As where land is given to an executor for-the purpose of paying debts, he must be presumed to take such añ estate as will enable him to effect the object of the devise. Such is the case of Oates v. Cooke, 3 Burr. 1686, from which the words of Mr Justice Wilmot are quoted, “that if it be necessary to imply intention it is the same thing as if it were particularly expressed.” That position no one can deny. All that is contended for is, that there must be a necessity for the implication before it will be allowed.
fey’s case.h?I '
The next and the last case, relied on by the complainants which I shall notice is the case of Robinson v. Robinson, 1 Burr. 38, and 3 Atk. 736. In that case the testator gives his estate- to Launcelot Hicks, during life ■“ and no longer, and after his death to such son as he may have lawfully begotten, and for default of such issue then over.” Here is an express estate for life given to the devisee, and no longer. There is then an express devise to such son as he may lawfully have, which is in fact a devise to his heirs male, and in default of such issue, &c.; yet the Court held, that it could not be construed a direct gift to the issue as purchasers, but that it must be construed an estate tail; and Lord Mansfield said, “ by law the testator ;C0U^ by no words make the father tenant for life and the heirs male of his body purchasers.” And that case is quoted to prove, that we must first imply a life estate, where a fee simple is expressly given, and then imply a direct gift in fee to the issue to whom nothing is given. \The case of Robinson v. Robinson is precisely what the complainants wish their case to be. It is a gift to *83 the devisee for life; there is then a devise to the issue, and for default of issue then over. Now let us imply a devise to Thomas Willson for life and no longer, and then a devise to his issue, &c. We then should have . the case of Robinson v. Robinson, which the House of Lords held to be an estate tail. We are therefore required to imply two facts directly contrary to the express word of the testator, in order to enable us to draw a conclusion which will not follow even when the facts are admitted. That is to say, we must first imply that Thomas Willson took a life estate, and secondly that there is a direct devise to his issue; both of which are contrary to the face of the will; both of which, when admitted, would leave the parties precisely where they are, if the case of Robinson v. Robinson is to be received as authority. It is therefore conclusive authority against the opinion in support of which it has been adduced. Perhaps it may be said, that the limitation in that case is after an indefinite failure of issue, but that in the principal case the word “ leaving” restricts it to issue living at the time of his death. I think, however, I shall be able to show by and by, that whatever influence may given to that word, it can have no effect in this case. At present, however, I will merely observe that, according to the English authorities, it can have none in any case of a devise of land. Fearne, 476, and the cases there quoted. It is true that in the case of Porter and Bradley, 3 Term Rep. 143, Lord Kenyon seems to intimate that there is no difference between a devise of real and personal estate in that respect. That expression has given rise to considerable discussion in the English books. Crooke v. De Vandes, 9 Ves. 197. 2 Fearne, 476, in note. The dispute is not material in this case, because the only question was, whether the words of the will carried a fee tail or a fee simple to the devisee, with an executory devise over. But *84 it did not involve the question submitted in this case*' [10WeVer it is important to know the extent to which Lord Kenyon intended to carry his ideas on that subject, perhaps some inference may be drawn from an opinion of his lordship in a subsequent case. In the the case of Daintry v. Daintry, 6 Term Rep. 307, the testator had given his estate, both real and personal, to his son John and the heirs of his body; and if he should die without leaving issue of his body, then over. The case was sent by. the Master of the Rolls to the King’s Bench for the opinion of the Judges. Lord Kenyon observed that this was precisely like, the case of Forth and Chapman, where Lord Macclesfield relied on the word “ leaving,” saying that when used in the limitation of personal property, it was confined to leaving issue at the time of the death.. Therefore as to the real estate, he thought that John Daintry took an estate tail, as to the personalty he took for life, and if he had children he took absolutely; if he left no children, then it would go' over to the uncle by way of executory devise. And after-wards all the Judges certified that John took an estate tail in the real estate, and an absolute estate in the personal.
The force « having”
Whatismeant by intention-
The other cases relied on by the complainants relate oniy to the general doctrines of intention and implication, of which not one word need have been said, as they are questions about which no lawyer ever entertained a doubt. The only question is respecting the application of them; and I have referred to the authorities adduced for the purpose of shewing how far they have been applied by the Judges, whose opinions-have been quoted in support of the ^general principle. And if I- have shewn (what I think does most manifestly appear) that their opinions are directly repugnant to the decision which is now under consideration, it will not be necessary, to resort to other cases to establish the *85 same principle. The cases however are so numerous, that we can scarcely open a book upon the subject but one presents itself to us. The case of Barnfield v. Wetton, 2 B. & P. 324, is so strong, that it is not attempted to be answered but by saying it was a question of intention, and therefore, is no authority for another case. But as this Court professes to be governed by authority, it is only necessary to see whether the opinion is in conformity with the current of former decisions. I admit, that if it were merely the opinion of Lord Eldon, however it might be entitled to our respect, it would not necessarily be a governing authority; but if it be consistent with established law, I apprehend we must be governed by it. The testator had devised certain lands to S. $>. and “her fyeirs and assigns for ever, but if she should die leaving no lawful issue at • the time of her death then over.” The Court determined that it must be construed an executory devise. It is supposed that Lord Eldon had great difficulties to struggle with in getting over the words, “ if she should die leaving no issue at the time of her death.” But I do not suppose he saw any difficulty in his way. It was a plain case of a devise over, after a fee given to the first devisee,- depending on the contingency of her leaving issue. Suppose the contingency should be the changing one’s religion, leaving the country, or accepting a commission .in the army, there would then be no doubt or difficulty in the case. And it does not appear to me that the difficulty is increased by adopting some other contingency, instead of those I have mentioned. Pells v. Brown, Cro. Jac. 550. 1 Eq. Abr. 187. Hanbury v. Cockerell, 1 Roll. Abr. 836. 2 Black. Comm. 169.
But it is said it is manifest that. his limiting it over upon the failure of issue was intended as a benefit to the issue. And so it was. He had given an estate to their ancestors, descendible to them, and he did not intend to *86 deprive them of that benefit. He limited it over therefore Up0n tire condition only that there should be no jggue to taiie_ But he intended to leave it in the power of the father to dispose of it as he thought proper for tjiej,r benefit, and not to give it to them immediately, without leaving him any control over it. The decision therefore in the case of Barnfield v. Wetton appears to me in unison with all the decided cases, and I do not see how the Court could have come to any other conclusion. Lord Eldon does not say the issue could not take as purchasers, but he appears to assume it as a settled rule of law, and did not therefore meet with any such difficulty as he is supposed to have had to contend with. So where an estate is controlled by implication, the same necessity must appear as where a devise is to one and his heirs ; and if he die, without heirs, then to one who may be his heir. This v^ill be construed an estate, tail, although the words of the will would carry a fee. It is apparent, that by • the word heirs the testator meant heirs of the body, and not an indefinite failure of heirs; as the estate is ultimately limited over to one who may .be his heir. See 2 Fonbl. 64, and the cases therein cited. Walter v. Drew, Com. Rep. 372. Fearne, 484, note. Attorney General v. Baigley, 2 Bro. C. C. 553. I think therefore the cases on which I have relied prove abundantly, that although the intention is to govern in the construction of a will, that intention must be apparent either from the words or provisions of the will, and must be consistent with the rules of law. That an estate by implication is never allowed to issue as purchasers. That an estate by implication is never allowed in any case except from necessity, which must be 'apparent on the face of the will, and for the purpose of carrying into effect the manifest intention of the testator. And that every case which has been relied on to prove the supremacy of in *87 tention, over every other consideration, shews that the Judges, whose opinions have been relied on, have never carried the doctrine so far as to break in upon any settled rule of law, or to contravene any solemnly adjudged case. These are not mere inferences, drawn from abstract principles laid down in the progress of cases quoted, but they are the decisions in those cases. And it appears to me an unauthorized method of legal reasoning, where we must necessarily be governed so much by precedent, to rely on the authority of great names for the purpose of establishing certain general principles, and then to draw inferences from those principles directly contrary to the conclusions drawn b$ the Judges themselves, whose opinions have thus been relied on a% authority.
Having shewn the kind of necessity which alone will authorize the raising, enlarging or controlling an estate by implication, let us see whether such necessity exists in this casé *? The testator gives to his grand son an estate in fee simple, defeasible upon his dying without leaving issue. The devisee has an estate transmissible to’his issue by descent. There is no necessity therefore of implying a direct gift to them, as they are entitled’ by the express terms of the devise to all the benefit which it is presumed the testator intended they should have. Without resorting to implication, all the words of the will are rendered operative, and it does not belong to the Court to give them an operation different from their natural and legal import.
I now come to the consideration of those cases, which have been relied on to shew that the complainants are entitled by precedent as well as principle to recover. And if the complainants have succeeded any better in this part of the case than the former, the time which I have spent in investigating the subject Mfes been most unprofitabiy employed.
*88 The first case relied on is Forth v. Chapman, 1 P.Wms, 666, which has been already referred to for another purpose. In that case the testator gave his estate, both real and personal, to his two nephews, and 1 , , “ if either of them should depart this life and leave no issue of their respective bodies,” then a devise over.
This case is relied on to prove that Lord Maccles-field was of opinion, that the issue might take as purchasers. But it has already been remarked that Lord Macclesfield says expressly, that those “ words as to the real estate carry an estate tail.” As to the personal estate, he was of opinion that the words, “ die without leaving issue#” meant leaving issue living at the time of #his death, and that the limitation over therefore was not too remote. It was riot because the issue took as purchasers, but because as there was no issue living at the time of his death, the contingency happened within the time allowed by law. So far from authorizing the inference that Lord Macclesfield considered the issue as taking by purchase, he says they could not by any construction have it. •
The next is the case of Reed v. Snell, 2 Atk. 642. The testatrix left her whole estate to her daughter and the heirs of her body, but if she should die leaving no heirs of her body, then to go over. Lord Hardwicke held that the word leaving meant, leaving issue at the time of her death. It might therefore be construed a direct gift to the issue, after the death of the first legatee. But in that case there is a direct gift over to the heirs of 'her body. It is not left to implication. Lord Hard-wicke does not say that the word “ leaving” may be construed into a gift, but that when the*lestator has given to the heir or issue it may serve to qualify the gift so that the issue may take by limitation or purchase according to the mention of the testator.
Let us remark the observations of Lord Thurlow in *89 the case of Knight v. Ellis, 2 Bro. 570. A man devises to A. for life, he then gives the same fund over to B. after failure of issue of A. The devisees would be entitled to an estate tail in the real estate; but an estate in chattels is not transmissible to the issue in the same manner as real estate, nor capable of any kind of descent,, and therefore an estate in chattels so given, from the necessity of the thing, gives the whole estate to the first taker : but if the testator, without leaving it to necessary implication, gijé the fund expressly to the issue, they are not driven to^ie former rule, but the issue may take as purchasers; and there is an end of the enlargement of any kind of the tenant for life; for another estate is given after' his death to other persons, who are to take by purchase; it no longer rests in conjecture. Here the distinction, between an express gift to. the issue and leaving it to implication, is clearly pointed out. In the first they may take by purchase; in the other they cannot take at all. And those words have no other effect, than designating a contingency upon which the property is to go over. ■
The next is the case of Lampley v. Bower, 3 Atk. 397. In that case the testatrix gives to her two nieces and their issue, and if either of them die without leaving issue, &c. There it was held that the issue took as purchasers. But if the estate had been given to the nieces without naming the issue, followed by these words, if tlHy should die “ leaving” ho issue, then over according to the distinction in the above cases, the issue could not have taken at all. The word “ leaving,” therefore, to which so much importance has been attached, has nothing to do with the case now under consideration, because nothing is given to the issue. It is further to be observed that all those cases, where the word “ leaving” has been allowed such influence, are bequests of personal property.
words in raThavefdii-ferent meaning when applied to real estate?1S01lal
TV ds wh" convey only conditional1 fee in lands, lute estate in pertyIlal pr°"
But it is said'that no distinction in that respect can exist here between real and personal estate, and that Lord Kenyon has denied its existence even in England. 3 Term Rep. 146. I have already referred to cases furnishing evidence of the English law upon that subject, and of the extent of Lord, Kenyon’s opinion. Whether such a distinction would be recognized here ór no, I shall not now stop to inquire, as I consider' it wholly irrelevant to the question. I would however observe, that it had never before occurred to me that our law, with regard to real ^'operty, had undergone such a revolution by the abolition of the rights of primogeniture as seems to be imagined. It is a very well settled principle, arid one I have never heard disputed before, that the same words in many instances have a different meaning when applied to real and perSOnal estate. Words which convey only a life estate or a conditional lee m land give an absolute estate in pre-sonal property.' '.These positions are so clear that I pre-hSume they not ^e denied. It would not be extraor-dinary, therefore, .if other words should be allowed a different operation, when applied to different species of property. But as the question is unimportant in this case, 1 shall express no opinion upon if. .1 am not aware of any case where the words “ dying without leaving issue” have been construed into a direct gift either of real or personal estate. They have only been resorted to, to qualify an express gift and to determine whetlfer it was intended that the issue should take by limitation or purchase. And such, I think, will be found all the cases which have been referred to. • From the view, therefore, which I have taken of the case, the complainants have shewn no right to the property in question, and therefore are. not entitled to a decree. It is not necessary, that we should determine the nature of the estate which the devise took. If he took a fee simple absolute, *91 he had a right to convey. If he took what in England would be called an estate tail, and here a conditional fee, the condition was performed by the birth of issue, and in that event the conveyance is good. If he took a “ ^ fee defeasible upon his dying without leaving issue at the time of his death, with an executory devise over, the fee would continue in the devisee until the contingency happened, and he might sell subject to that contingency. If the contingency never happened, and can never happen, then the title can never be defeated, and the purchaser is secure.
With regard to the policy of the construction which I have given to the will, whether it is the one best calculated to unfetter estates, and promote that legal distribution which it is the object of our act to effect, is a question on which I have nothing to say. I shall leave that question to take care of itself.
I have not considered the question of jurisdiction on which the bill was dismissed — whether the Court had jurisdiction or not*? If the complainants had no right to recover either in that Court or any other, the decision ought not to be supported. It is the opinion of the Court, therefore, that the motion ought to be dismissed.

Motion refused.